versus Burlington Northern Santa Fe Railway Company. Do you say all the words these days or is it just BNSF? Anyway, that's the case. The number is 19-5001. Counsel. Judges, may it please the court. This is an appeal of a narrow summary judgment ruling that was entered in this case. This district court found that the plaintiff failed to yield for a horn sounding and was therefore negligent per se, barring both his claims and the claims of the intervener in this matter. They were completely barred in this case. The facts of this case are pretty straightforward, judges. Plaintiff Tyler Malinski, his passenger Nathan Smith, the intervener, and Mr. Malinski's cousin Cade Roberts were attempting to go muddying by crossing a railroad crossing back in December of 2015. Those individuals and those individuals alone know what they saw and perceived on that day as they were attempting to go across. As to Mr. Roberts, in opposition to summary judgment in district court, did you rely on his testimony to oppose summary judgment? We did not judge. It is in the summary judgment record, Mr. Malinski. Had he heard the horn, he would not have stopped, but we did not. I do not think judge that it would have made a difference under the court's analysis in this case. One thing I do want to point out, judges. Well, that court's analysis or what about our court's analysis? Well, you have a de novo review, judge. Okay, we have de novo review, but if you didn't rely on it in district court, why should you be able to do so here? To get to that point, judge, first of all, I don't think that it would have mattered to the district court's analysis. If you read the district court's opinion, the entire opinion is focused on did the train horn sound and was it audible to any individuals? As long as it was audible and it met the standards, it wouldn't have mattered. We could have put that evidence in and the court still would, in our opinion, disregarded that evidence. The other thing we were taking judges, and I wanted to point out why it was a narrow summary judgment ruling, is there were about five or six bases for summary judgment in this case. The horn had three facts on the horn in the first summary judgment. There were four facts on the horn in the second summary judgment. There were multiple other issues. Both parties were well in excess of their page limit links. We did put forth evidence, the trial court's evidence that they relied on, the evidence that BNSF was relying on in the horn sounding was the testimony of an individual who lived more than 1,500 feet away. In compliance with the local rules, we disputed that testimony by using his testimony. I don't think there was any question, Judge Matheson, that they didn't hear the horn and I just don't think it would have made a difference even if we had cited in the case the way the judge ruled. If you look at the judge's ruling in this case, the district court, I think there's three main areas of error and I do think they all kind of blur together. The first is the judge didn't apply the reasonable person standard. And again, Judge Matheson, I don't think, there's almost no discussion, is this court in the Ross case, which I believe you authored, Your Honor, talked about, you know, the question is, does it establish that it was audible to a reasonably prudent person from plaintiff's position? And there's no analysis of that. No analysis of the reasonable person standard in the district court's opinion. The district court just found the horn sounded, it met all the federal audibility standards, we don't know why the plaintiff didn't hear it. Does the Oklahoma case law support the application of a reasonable standard person with respect to these audibility cases? I do believe it does. And if so, how? Judge Moritz, if you take a look at both, so the Ross case was recently cited with approval by the Oklahoma Supreme Court in the Nye decision, which I believe is a 2018 Oklahoma Supreme Court case, which I know that we've discussed at length, if not in our opening brief, then in our response brief. But they take the reasonable prudent person standard, the kind of this court, and Ross was an unpublished opinion, but Oklahoma Supreme Court found it particularly persuasive, and applied it in that case, and that was a case that was an appeal post, it wasn't a summary judgment case, but post-trial verdict case. And they looked at it and there was evidence in that case about the black box and whether it was heard, or specifically in that case, whether the black box was turned on or not. But there was testimony from witnesses as there is in this case. Was there a video in that case? A video that you could actually hear, as we could in this case, the warning? I'm not 100% sure, Judge. Doesn't this make this different? I mean, we know there was some sound here because we can hear it. Right. There's undisputed, we do not dispute at any point that the video shows the horn sounding, and that the black box shows the horn sounding in this case. What we have is competing testimony from two people that were in the plaintiff's position, which we believe is the relevant inquiry, saying they didn't hear it. Well, the problem you have with that is the Oklahoma case law that suggests that what you have is negative evidence. You don't have positive evidence. You have two people saying I didn't hear it, but you don't have anything in the line of positive evidence, which those cases have said would be, for instance, someone saying, and I was paying particular attention, I rolled down my window, or I always go this way, and I know I need to look for the train, or listen for the train, or anything beyond, I didn't hear it. So why don't we have that situation here of two people with what is considered negative evidence? I do think, Judge, if you look at that line of cases and the line of cases that says that, and they rely a lot on these cases, the Flowers case, which is an Oklahoma Supreme Court case from 1940. That case has been distinguished at least four separate different times by the Oklahoma Supreme Court. I didn't find any case law saying that the negative versus positive distinction was no longer valid. Right. What I would instruct the court to look at, Judge Moritz, in reviewing Flowers and preparing for our argument today, and I did not cite this case in my brief, but there's an Oklahoma Supreme Court case that discusses Flowers from 1967. That case is Missouri-Kansas Railway Company versus Kaiser, K-I-S-E-R 441 Pacific 2nd, 976, Oklahoma Supreme Court, 1967. That case says, quote, when a witness was in position to make observation as to whether a certain fact existed or a certain thing happened, and he testified that he did not know of the existence of the fact, and he did not know the thing happened, his testimony is not negative and must be submitted to the jury. That's a post-Flowers case saying that. The other thing I would add, Judge Moritz, is the cases that talk about that, they're just talking about it from, there's just the plaintiff in the Flowers case, and I think Flowers is also factually distinguishable. This is an independent witness, Mr. Roberts, also said he didn't hear it. And I, in all the cases I've read, when you have another witness, it's not just the party's witness, a non-party witness saying it, that's usually good enough to get it to the jury. You can look at the Cornwell decision, which is a northern district of Oklahoma decision, where there was dispute between witnesses saying they heard it and witnesses that said they didn't hear it. One person even said he couldn't remember whether he heard it after the fact. That case, I think when you have that many witnesses, that gets you to the jury. What about here, though, where we don't, I think your driver, Mr. Molenski, testified, didn't he, that he basically couldn't remember anything until he woke up in this hospital room. So how does he anything he has to say, how does, you know, that he, how could he say he doesn't, he didn't hear it, and yet he also didn't remember anything? How do we get that validity? Judge Moritz, I know that we addressed that issue in our reply brief. It's disputed. We hotly dispute the testimony that they cite saying he didn't remember it. If you read the testimony we cite in our reply brief, what he says is he doesn't remember, and I may not get this entirely correct, but from the point of impact onward, I read his testimony to say that as he was approaching the crossing, which is where they want you to hear this train warning, he does not remember hearing a horn sound. And I think he's clear enough in his testimony. So it's not that he didn't remember that. So what about the part where he testified, and you objected to this as speculation, but he basically said, yeah, I was following my friend, and I probably should have, I probably should have looked. But I think you're arguing that part, he must not have remembered, he was just speculating, right? So I'm kind of inconsistent on what, I'm kind of trying to figure out what it is you're saying he must have for sure remembered, and what part you don't want to accept. I think, Judge Moritz, getting back to that point, you can look at all the testimony, and you're correct, some of those questions were objected to at the deposition testimony, and we obviously haven't had a ruling on some of those objections. Those are, he's responding to questions from defense counsel who's aware of the Flowers case and is going to frame it in that mindset. What's important is, I think also to look at is, in addition to, and this gets into some of the other parts of our brief, and in my argument today, is just the hearing fact alone is just one thing that they're having to consider at this crossing. And we've cited all these other facts, and these are in the summary judgment record about everything that these individuals had to perceive at this crossing. And I think it's important to note it's a passive crossing, there's no active warning signals anywhere at this crossing. It's humped, it's skewed, it's in bad condition, it's raining on the day of too, it's raining, it's dust, there's all these other factors, and if you look at the case law on train horn soundings and passive crossing cases, all those factors have to be considered. Was it raining at the time of the collision? I believe there's some evidence in the record that it was raining. It's not, I don't think anybody actually testified, I mean it wasn't pouring rain, Judge, I think that's pretty much clear, but that it was at least sprinkling. Why doesn't the federal regulation on the train horn decibel level set the starting point on what a reasonably prudent driver can hear? I think, Judge, that in applying that standard, I really honestly think that those regulations are a bit of a red herring and they get you a little too far afield. If you look at those regulations, the court would... Well, if the horn hadn't met the regulation, I assume you'd be arguing that, so they've got to mean something. Right, and to your point, Judge Matheson, that's when those cases are relevant. In cases, if you read all the case law talking about those regulations... So it matters if the horn doesn't meet the regulation, but it doesn't matter if it does? No, I think, Judge, again, we're not disputing that the horn sounded, and we're not disputing that the horn sounded in accordance with the regulation. Are you in compliance with the regulation? Right. There's no evidence. We have no evidence that it was not in compliance with the regulation. What we don't have... Well, that's different. Did the evidence show it was in compliance with the regulation? Didn't they do a test shortly thereafter? They did do a test, Judge. Now, the test was done 10 days after the collision. I cite a case from Missouri in my case that leaves a jury issue whether it sounded in accordance with the regulation on the day of. That's what we don't know, Judge Matheson. Well, okay. I understand that part of your argument, but let's assume that it did meet the regulation on the day of. Why isn't that dispositive? I think if you do that, Judge, and you go down that, what you're going to have is... That's all the railroad's going to do. They have a duty to maintain a safe crossing. We've cited all the reasons that they don't believe that this crossing was safe. If you just start and end with the regulation, all the railroad has to do to avoid any type of liability, cut off any negligence, take this question away from the jury and say, the horn complied with the regulation. We show that it sounded at this. It was audible for 1,500 feet. Find a witness which they did in this case who didn't hear it on the day of to say that they could hear it, and that witness didn't even say he heard it. Well, that's not all they did. They have the video or you can hear it. You can hear it multiple times going off. They have the horn test that they did. They have the regulations that it complied with. I don't know how you can say that this is easy for them, and they have a statute that says there's per se negligence if it's audible, and that statute's not disjunctive or conjunctive. It's disjunctive. You don't have to meet all those other... It doesn't matter what the railroad did on 1, 2, 4, and 5 if it was audible, he had an obligation to stop. Right. But the question is, from their position, was it audible? The train video does show it, Judge Moritz, but there is case law talking about when you're applying this reasonable person standard, and courts have said, well, the video doesn't show it from their position. So the video shows the horn sounding, but it doesn't obviously show what they're hearing from their position. But as far as what they are hearing, and as far as this reasonable person test, there's evidence the music was very loud in that automobile. Doesn't that filter into the reasonable person and also what the railroad can and can't do? It does, Judge. It filters into the reasonable person, and it's something for the jury to consider. First of all, the fact that it was playing loudly was an inference that was made by the court in their summary judgment ruling. That's not supported in the record. What they said in the record was it was playing, but it was loud enough for them to have a conversation. So, again, that's a fact question that gets us to the jury and the court considered that in the reasonable person. And I'd reserve the rest of my  time. May it please the court. Good afternoon. I'm Mary Ann Auld on behalf of BNSF Railway Company. The district court correctly granted summary judgment to BNSF based on the undisputed record before the court. In doing so, the court properly focused on the very important language of Section 11701A3 of the Oklahoma Statutes. It bears emphasizing what that language says. A motorist must stop when a train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and the train, by reason of its speed or nearness to the crossing, is an immediate hazard. If the motorist violates his duty to stop, that failure constitutes the supervening cause of the accident under established Oklahoma law. In this case, the undisputed record establishes as a matter of law that BNSF's train did sound a signal audible from such distance and, unfortunately, Mr. Molenski did not stop. Accordingly, the district court correctly granted summary judgment to BNSF and BNSF respectfully requests that the court affirm that judgment. The duties outlined in Section 11701 reflect the practical realities of rail transportation. Between a motorist approaching a crossing and a fully loaded train that is traveling down the track in excess of 50 miles per hour, only a motorist has the capacity to stop and avoid a collision. A train does not, nor does a train engineer have the ability to divine the individual circumstances of a given motorist. Could you zero in on the evidence, what you're arguing is undisputed evidence, that the horn was audible under these circumstances to a reasonably prudent driver? Yes, Your Honor. The undisputed evidence in this case was that BNSF began to sound its horn approximately 1,210 feet away from the crossing. It continued to sound its horn throughout the approach. Both the video and the event recorder demonstrate that. The train, therefore, presented an immediate hazard. When the collision had happened 10 days after that collision, the train was tested, the horn was tested in compliance with the CFRs that regulate the train's conduct, and the testing that was conducted by the third party in compliance with the standards that are set forth determined that the decibel level was 100.5 decibels, which is directly in the middle of where the FRA has said that. The FRA has established that trains and locomotives must be equipped with horns that blow between 96 and 110 decibels. And so this 100.5 reading is right in the middle. At that point, audibility is established as a matter of law. Well, is that what the regulation says? If there's compliance with the decibel level, does that necessarily ensure that a reasonably prudent driver would hear the horn? Again, you have to go back to the language of 11701. We're looking at these things in combination. The FRA has set the level at which the horn must blow, and we know that the horn was capable. Counsel, do you agree that the test incorporates what a reasonably prudent driver would hear under the circumstances? Is that the test? What a reasonably prudent driver in the plaintiff's position at the crossing would hear, yes, Your Honor. But that does not Let me just complete the thought. Yes, Your Honor. We're going to assume that the test showed that the horn met the regulation, and we'll further assume that even though that was 10 days after, that's what the horn did on the day of. But is that enough? Is that all the railroad needs to show? Yes, Your Honor. Once the railroad has proved audibility, the burden shifts to the other party. I mean, again, we're showing as a matter of law that it was audible. There's nothing else that the railroad can do. What authority do you have that the burden shifts? If you read Aiken, if you read Hamilton, if we read the short case, even this court's case in Ross that you wrote. Well, I read Aiken, and the Oklahoma Supreme Court said that in determining whether a driver saw or not, considerations of time of day, weather, lack of tinted windows, travel conditions, position of the driver's windows, volume of the music are relevant to consider. Do you disagree with that? What I would say, Your Honor, is that in the cases such as Nye and this court's case in Ross. I was asking about Aiken. Are you disagreeing with Aiken's analysis? I am not disagreeing with Aiken's analysis. Well, then why isn't that part of what should be considered here? We're assuming the horn compliance, but is that all there is to the story? No, Your Honor. What I would say is under 11701, when the railroad has met its burden of showing whatever is required under the provision that's at issue in Aiken, it was sub 1 and 2. In this case, it's sub 3. In the short case, it was sub 4. I'm not sure what these sub numbers mean, counsel, but let's go to the record. I want to ask you about one of the witnesses you relied upon for summary judgment, Mr. Nacoste. Is that how you pronounce his name? Yes, Your Honor. All right. Apparently, he said that he could hear the horn from his home. Was that his deposition testimony? He did say when he was paying attention, he could hear the horn from his home, which is approximately 1,500 feet from the crossing. All right. Was there any evidence that he was in a car when he heard the horn from his home? No, Your Honor. He would say there was evidence that he could hear it from the home. There was evidence that if he was paying attention, he also spoke as Mr. Walensky. My only question was whether he was in a car when he said he heard the horn. Is the answer yes or no? The answer is no. All right. Let me ask another thing about Mr. Nacoste. Yes, sir. Apparently, the parties agreed that he lived actually more than 1,500 feet from the crossing. Is that correct? Yes. But did he live more than 1,500 feet from the track? Is there any evidence about the relationship between where his home was located and where the track is located? No, Your Honor. Why should the railroad then be able to rely on his testimony when he wasn't in a car when he said he heard the horn and we don't have evidence of where his home was relative to the track? Your Honor, I would say that Mr. Nacoste's testimony is valuable to confirm what the railroad's independent evidence establishes otherwise, which is that the horn sounded from the correct distance, for the correct time, and at the correct decibel level. That makes the horn audible as a matter of law, and then it is up to Mr. Molenski to come forward with evidence that challenges that. When we start talking about the reasonably prudent driver, that is an objective standard. That is not to suggest what anyone actually sitting at that crossing would hear, but the reasonably prudent driver. Counsel, is it reasonably prudent for a driver to have the radio on? It is. And those kinds of things, those particular circumstances, part of the situation of the driver at the crossing has to be taken into account by the driver in determining how to proceed into a known dangerous situation, which Oklahoma law says that A grade crossing is. So if you go back to the A grade... So didn't the court draw an inference that the music was at a high volume? There was an inference that the music was at a high volume. Aren't inferences supposed to be drawn in favor of the non-moving party? And yet, in this case, BNSF... I'm just asking a summary judgment question. Is that correct? It is a summary judgment question, but it's not, in my view, and respectfully, once BNSF has proved as a matter of law audibility, then this evidence of what Mr. Molenski or Mr. Roberts did or did not hear actually is not sufficient to create a fact question on audibility. What about the Kaiser case, Oklahoma, 1967? Didn't the court say the testimony from witnesses who did not hear the train horn until immediately before the collision, that that testimony is relevant on summary judgment? But that was not where there had been an actual proving that there was audibility as a matter of law. In a situation, for example, in both the Kaiser case, in the Nye case, in the Ross case that this court decided, the railroad, according to the court, had not sufficiently demonstrated audibility from such distance under 11701. Here, BNSF did. BNSF read the Ross opinion, went to school on the Ross opinion, believed what the court said when it said, you still have to show audibility from such distance. Well, what was missing? We have now tested the horn. We know it was sounding from the video. We know the distance was appropriate. We know that the length of the horn test was enough. We also now know it was within federal limits and there was nothing else that the railroad could do. Aiken, if the court goes back to Aiken, its analysis did not turn on what Mr. Aiken actually saw at the crossing. That was the case where there were flashing signals. Instead, the court determined that Mr. Aiken's negligence was the proximate cause of the collision, even though the court fully acknowledged it could not know why Mr. Aiken didn't see, ignored, or otherwise fail to perceive the warnings of the presence of a train. This court's opinion in Ross that you wrote, Judge Matheson, is consistent with Aiken on this point. You followed Oklahoma law where the court applied a reasonably prudent driver standard and in Ross cited with favor the jury instructions that provide that the law requires those approaching a railroad to exercise the care an ordinarily prudent person would use for his own safety in the same situation and circumstances and to avoid getting himself into a place of danger. Those circumstances, that situation that you speak of in Ross and that Nye and Prest affect the driver's duty of care. A court does not assess audibility based on the plaintiff's individualized circumstances because otherwise the test would not be objective at all. Audibility question. In the court in Ross, am I thinking of the correct case, in the court in Ross discussed the fact that he was in a heavy piece of machinery and couldn't have heard perhaps. Shouldn't that have really changed, what you're saying is that should have changed his obligation to perhaps be more careful and pay closer attention but that that should not have factored into the court's analysis? In Ross, the way that I read Ross, Judge Moritz, it looked as if the court had already determined that the burden wasn't met. Ross was really an A4 case. I hate to throw out the subdivisions again but whether the plane was, excuse me, the train was plainly visible. 11701 A4 talks about whether the train is plainly visible. And so Ross really focused on that because that's the basis on which the district court had ruled and then looking at the alternative A3 ground, the court said well, we've got to have a heightened standard because the district court didn't actually address this in its order. And so under that heightened standard the court had determined BNSF's evidence was not sufficient so we had not as a matter of law met our burden. That burden shift didn't occur. And so then there was some evidence put forth about what Mr. Ross had presented. But at that point it really didn't make much of a difference when we're looking at a summary judgment. It just says there's competing evidence on this point. Well I read that to say it pertained to audibility so I was a bit confused. That really is something that if you go back and look through Nye and Ross and Aiken and Hamilton, the reasonably prudent driver standard really is talking obviously about the driver and the circumstances that the driver finds himself at the crossing are something that the driver has to take into account. Can't impose on the railroad that has established that what it's doing as a matter of law is appropriate under the regulations. Can't count on the train to look and say I wonder if that person at the crossing has this going on or that going on. The circumstances at the crossing, in the person's car the weather, those things affect what is reasonable for the driver, for the motorist to do. What about Mr. Roberts deposition testimony? Is this court allowed to consider that now? It's not part of the record. Generally when it's not part of the record below then the court does not do it. But I would suggest that even if you consider his testimony that is not probative evidence and competent evidence that undercuts BNSF showing as a matter of law of audibility. Why isn't it competent evidence? He drove through the crossing and said he didn't hear the horn. Whether or not he heard it though does not establish whether the horn was audible I understand that but you're saying it's not competent evidence. He was there. He drove across the crossing. Is it something that can't even be considered? That is evidence that would not be competent evidence of audibility. Why not? He said he didn't hear it. He may be right, he may be wrong but this is what he's saying under oath. But you go back to the language of the statute. Well no I'm talking about federal rule of evidence 401. Are you saying it's irrelevant? I'm saying that when we're looking at the language of the statute that controls the analysis of this case Is it irrelevant? Is his testimony irrelevant? His testimony is not relevant to whether the train emitted a signal audible from such distance. BNSF proved as a matter of law with the evidence that we've recounted in the brief and that we've discussed here today that there was an audible signal. There needed to be evidence showing that it was not and as counsel from I'm sorry Judge Morris. Well I guess you're out of time and I just want to ask this one question I guess I'm not understanding why you bothered to make the argument about positive versus negative evidence when I think what you're saying is once BNSF meets its burden to show audibility which you suggest they have here it doesn't really matter what they might testify to it's not a question of fact. I think that's what you're saying so it doesn't really matter It's a two pronged approach. I would say that that is not competent evidence on the issue of audibility but even if it were to your point under the FLOWER standard that continues to apply and has not been overruled it is negative evidence. So there's two reasons. Alright let me just ask had they testified in more detail here and said well I was paying attention or my window was down or I do remember this and I always do pay attention as I go across. Would that have been sufficient here to overcome what you established which was audibility? I don't believe so. So I don't think it matters is what I'm saying. The reason is the Ross opinion and Nye and Aiken and Hamilton that don't look at what the individual actually saw. And I know I'm out of time but let me briefly just say Aiken is the best case to go back to on this in terms of what was actually perceived by the individual. It just doesn't matter and so there is a quote at the end of the opinion where the court says that the consequences were catastrophic for the plaintiff and his loss. We will never know why he didn't perceive those warnings and the same thing would apply here. Whether he did or didn't is not what the standard is. In the Ross case we had not presented according to the court the evidence to establish that this was audible from such distance. Counsel I don't want to belabor the point but you relied on testimony from a neighbor of what that person actually perceived. It corroborated the testimony. I understand but why wouldn't testimony from really anyone who was there and had the ability to sense through the way we sense things here through their hearing. Why wouldn't that information be probative as to what a reasonably prudent person would have heard? The question of what is audible from such distance and what the individual actually heard are two different things. To the extent the court decides to give credit to what that individual said then we come back to the flower standard that that is negative and not positive because in this case they testified, Mr. Roberts testified he was listening to the radio, he was not paying attention. That does not under flowers and that testimony cannot be considered. Thank you counsel. We will need to give Mr. Rapp a few extra minutes. I think she went up to four. Thank you judge. Just to briefly respond to some of the arguments. I think the court has kind of latched on to what I believe are some of the main issues in this case. I think one of the big problems with their hearing today is the difficulty if their standard is adopted of proving a negative in this case and coming forth with any type of testimony and I do believe it is probative testimony Judge Matheson of what they heard or not because otherwise you are going to have to get some sort of testimony like the plaintiff was hard of hearing or some sort of other factor to be able to say that the horn wasn't audible on that day. That shouldn't be the standard. The standard should be what a reasonable person heard on that day. Again, there is no evidence of what any individual in the plaintiff's position on that day heard. Here is what I am struggling with. Just watch the video. He creeps into that intersection. This is not a car going 50 miles an hour that gets hit by a train going 50 miles an hour. Creeping across there. The train is coming down the tracks from whatever distance. It is closing fast. The horn is blaring. I fully believe that he didn't hear the horn or he would have stopped and it would have been so easy to stop. He is barely going. Something explains why he didn't stop and the only thing that I have heard isn't rain and it isn't gravel because he is barely traveling. It is that music and he doesn't say the music was on or the radio or listen to ball game. What he says is what I show him saying is that the music was playing loud enough where you can still hear each other kind of. That sounds like loud music to me. What if that is the case? The only reason he didn't hear the train 100 feet away blaring its horn as he crept across the tracks was because the music was blaring. Then where are you? I think that is a question for the jury to look at. What is the jury supposed to answer? Based off that testimony and what I assume is testimony would be a trial, is that reasonable or unreasonable under the circumstances in this case? I know all the judges have seen the video. What you also have to consider again and that we put a lot of in our fact was the approach to this crossing. The reason he kind of slows down is because it is not a straight 90 degree. It is skewed. There is a dog leg at the back. That is what he is also having to perceive. He also has to make sure because it is humped he doesn't run into Mr. Roberts going across the other side. There is a bunch of things you are asking these individuals to do. The Cornwell case and the Nye case which is the most recent Oklahoma Supreme Court case. Those other factors also have to be taken into account as a defense to negligence per se. Maybe not as evidence probative to our claims but as a defense to negligence per se which is the argument that they want to make. I want to just briefly touch on the cases that they rely on. Primarily Hamilton and Aiken and again distinguish that those are active crossing cases and ours is a passive crossing case. I think if you read enough of the cases and I know the courts read a lot and have read a lot too. There appears to be a pattern that I detect in these cases between what is clearly careless conduct and what could be described as reasonably prudent standard is just legal ease for careful. What would a careful driver do? These cases where people went around a gate and around stopped cars into the other lane, that is carelessness. Aiken the lights were on. The court determined it was plainly visible to cross. That is carelessness. What we don't know in this case because of all these other factors and their testimony they didn't hear was whether they were careless or careful. That's for the jury. That's probative evidence that gets that to the jury. I just want to conclude with one final... This all frames it in terms of the audibility being established as a matter of law and shifting the burden. Can you address that framing of the argument? Sure. I think Judge that that's the audibility issue and whether the horn sounded. That's just one factor of many that you have to consider in this case. The Oklahoma statute is about audibility. Correct. We're looking at per se negligence issue. Why don't you address it from the standpoint of the statute and audibility. I think as I read the statute Judge and I'm not sure if this is in that specific sub part or in the statute as a whole. You read all those sub parts in the statute. They are in the disjunctive but it talks about when I think the burden shifts when it's clear that a driver who observes a light or a gate or hears a horn or sees a stop sign or whatever else is in the statute. The burden shifts when it's clear to the driver that they have to stop and then they can't go again until they can proceed so safely. I think that's what the case law or the statute talks about. Here in this case even with the horn sounding and all that you have testimony from Mr. Roberts who says had he heard the horn he would have stopped. That's when the burden shifted. It didn't shift in this case because he said if he had heard the horn he would have stopped. So I think that's when you look at audibility Judge that's what you're looking at is when the burden shifts is when a plaintiff is put on warning a driver of one of these factors they have a duty to stop and can't go again until they proceed so safely but they have to hear it or they have to see it. So I think that's the critical issue in looking at these issues in this case and if I could I'd like to quote with just one case. Be brief because we're over time. Judge Matheson I just want to quote real quickly the Supreme Court case that you cited in Ross from Texas and the quote that's relevant in that it's Texas Northern versus Day  is to be charged with contributory negligence it would be difficult to find an instance in which the defense was not fully established that's what they're asking for today. It's a strict liability theory of defense. The legal test is not what the driver could have done had he used his senses but what an ordinarily prudent person would have done under the circumstances. Thank you judges. Thank you. Thank you counsel. Thank you to both. These arguments have been very helpful. Case shall be submitted and counsel are excused.